UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RODNEY ELLIS,

       Plaintiff,                            Hon. Ellen S. Carmody

v.                                                Case No. 1:07-CV-910

MARILYN KAYE-KIBBEY,

       Defendant.
_____/


## OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment for Lack of Damages. (Dkt. #127). On December 22, 2008, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Paul. L. Maloney referred this case to the undersigned. (Dkt. #51). For the reasons articulated below, Defendant's motion is **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's Second Amended Complaint. (Dkt. #39). On August 27, 2003, Plaintiff and Defendant executed a Release Agreement (the "Release Agreement"), pursuant to which Defendant agreed to not "initiate or join in negative or critical comments, discussions or other communications about, or otherwise disparage [Plaintiff or his business], their affiliates, or their services, employees, clients, agents, attorneys, accountants, banks, or any other person associated with [Plaintiff or his business]."

Defendant, in violation of the Release Agreement, made, on multiple occasions, statements disparaging Plaintiff. One such instance concerned an affidavit Defendant executed on April 7, 2004. On April 13, 2004, Lincoln National Life Insurance Co. and Lincoln Financial Advisors Corp. ("Lincoln") initiated legal action against Plaintiff. Lincoln initiated this action, at least in part, based on the assertions Defendant made in her affidavit. This action was later stayed so that the parties could pursue arbitration. Plaintiff subsequently initiated an arbitration action against Lincoln. Soon thereafter, Lincoln reciprocated by initiating an arbitration action against Plaintiff. In both of these proceedings, Lincoln relied on the assertions contained in Defendant's affidavit. These two proceedings were later consolidated. Defendant eventually testified as part of the arbitration proceeding, offering testimony consistent with the allegations articulated in her affidavit. *Id.*

The arbitration panel ordered Lincoln to pay to Plaintiff $500,000[1] in compensatory damages and $130,000 in attorney fees. (Dkt. #128, Exhibit 15). Plaintiff initiated the present action on September 13, 2007, seeking to recover certain costs and expenses he allegedly incurred in the aforementioned litigation and arbitration proceedings. On July 8, 2008, Plaintiff filed his Second Amended Complaint, in which he asserts a single breach of contract claim. (Dkt. #39). Defendant later moved to dismiss Plaintiff's Second Amended Complaint. (Dkt. #40). Defendant argued that (1) the Release Agreement was no longer in effect when she made the allegedly disparaging comments, and (2) even if the Release Agreement was in effect, she cannot be held liable for her allegedly disparaging comments because she made them as a third-party witness in a legal proceeding.

On October 19, 2008, the Honorable Paul L. Maloney issued an Opinion and Order granting in part and denying in part Defendant's motion. (Dkt. #45). In relevant part, Judge Maloney

---

[1] This amount was reduced by $127,000 for Plaintiff's willful violation of a court-issued temporary restraining order, as discussed below.

ruled that whether the Release Agreement was in effect when Defendant made her allegedly disparaging remarks was a question of fact. Judge Maloney further held that "the Michigan common law accords absolute quasi-judicial immunity to some - but not all - of [Defendant's] communications." Defendant now moves for summary judgment on the ground that Plaintiff cannot establish that he has suffered any compensable damages in this matter. Plaintiff is seeking damages which fall into three separate categories, each of which is examined separately below.

## ANALYSIS

**I.        Penalty for Violation of Temporary Restraining Order**

As noted above, Lincoln initiated legal action against Plaintiff on April 13, 2004. Two days later, Lincoln obtained a Temporary Restraining Order (TRO) which, in part, ordered Plaintiff to not destroy certain computer files. Plaintiff violated the TRO, however, by deleting certain computer files. As a result, the arbitration panel awarded Lincoln $127,000 in costs incurred as a result of Plaintiff's violation of the TRO. Plaintiff, in the present action, seeks to recover from Defendant the $127,000 he was ordered to pay to Lincoln for violating the TRO. Defendant opposes such on the ground that the alleged breach of the Release Agreement was not the proximate cause of these alleged damages. Before examining the substance of this particular issue, the Court must first determine the body of law applicable in this matter.

The Court has jurisdiction over the subject matter of the present dispute pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332. When presiding over a diversity action, federal courts must apply the substantive law of the state in which the court sits, including that state's choice of law rules. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002).

In *Chrysler v. Skyline Industrial Services, Inc.*, 528 N.W.2d 698 (Mich. 1995), the Michigan Supreme Court addressed the issue of the choice of law rules applicable in contract disputes. While recognizing that the "predominant view in Michigan has been that a contract is to be construed according to the law of the place where the contract was entered into," the court noted that such a "rigid" approach was not always appropriate. *Id.* at 702-03. In this respect, the court indicated that sections 187 and 188 of the Second Restatement of Conflict of Laws, with its "emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities." *Id.* at 703.

Accordingly, in the context of a contract dispute, Michigan choice of law rules require courts to examine the factors articulated in sections 187 and 188 the Second Restatement (and employed by the *Chrysler* court) so as to balance "the expectations of the parties to a contract with the interests of the states involved." *Mill's Pride*, 300 F.3d at 705 (recognizing that the *Chrysler* decision is the controlling authority in Michigan on choice of law issues involving contract disputes); *see also*, *Mitchell v. Travelers Property Casualty*, 2002 WL 31953815 at *1-2 (Mich. Ct. App., Dec. 13, 2002) (same). The contract at issue in this case provides that it "shall be construed under the laws of the State of Michigan." (Dkt. #128, Exhibit 15). Pursuant to Section 187 of the Second Restatement of Conflict of Laws, this choice of law provision is to be given effect. Accordingly, the Court will apply Michigan law in this matter.

Under Michigan law, "the damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made." *Kewin v. Massachusetts Mutual Life Ins. Co.*, 295 N.W.2d 50, 52-53 (Mich. 1980); *see also*, *Sullivan Industries, Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d 623, 630-31 (Mich. Ct. App. 1991)

(non-breaching party may recover only those damages "which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting").

Defendant argues that the alleged breach of the Release Agreement was not the proximate cause of the sanction imposed on Plaintiff for his violation of the TRO. Plaintiff counters that "[i]t is undisputed that Kaye-Kibbey's disparagement of Ellis. . .was the initial cause of the series of events. . .that led to Ellis violating the TRO and being sanctioned for it." As stated at the November 13, 2009 hearing on this matter, the Court finds that it was not reasonably foreseeable, when the parties executed the Release Agreement, that a breach thereof by Defendant would cause Plaintiff to willfully disregard a court-issued temporary restraining order. Accordingly, the Court grants Defendant's motion for summary judgment as to this particular issue.

**II.        Attorney Fees**

As discussed above, Plaintiff initiated an arbitration action against Lincoln which was later consolidated with the arbitration action Lincoln initiated against Plaintiff. With respect to Plaintiff's claims against Lincoln, the arbitration panel awarded Plaintiff $500,000 in compensatory damages and $130,000 in attorneys' fees. Plaintiff now seeks to recover various amounts in attorney fees allegedly incurred in the course of this arbitration proceeding. Defendant moves for summary judgment on the ground that such amounts are not recoverable.

A.      Fossi & Jewell

Fossi & Jewell, pursuant to a contingent fee arrangement, represented Plaintiff before the arbitration board.  As a result of this arrangement, and the amount Plaintiff was awarded in the arbitration proceeding, Plaintiff paid Fossi & Jewell $203,951.  Plaintiff now seeks to recover from Defendant $73,951 ($203,951 minus the $130,000 awarded by the arbitration panel) in attorney fees that he paid to Fossi & Jewell.

Defendant asserts that Plaintiff cannot recover these fees because they were not incurred as a result of the alleged breach of the Release Agreement.  Defendant argues that these fees were incurred because Plaintiff prevailed in an action/claim that he asserted against Lincoln, not as a result of Defendant's or Lincoln's actions.  Plaintiff disagrees, arguing that had Defendant not breached the Release Agreement, Lincoln would never had sued Plaintiff and had Lincoln never sued Plaintiff, Plaintiff would never have initiated an arbitration action against Lincoln.  Plaintiff also argues that while Fossi & Jewell's fees were paid from Plaintiff's recovery from Lincoln, their fee also encompassed payment for defending Plaintiff against Lincoln's arbitration action.  However, as Defendant asserts, Lawrence Fossi testified that if Plaintiff had recovered nothing in the arbitration proceeding, his fee would have been zero. (Dkt. #128, Exhibit 17 at 87-88).

The Court hereby grants Defendant's motion for summary judgment as to these alleged damages.  The connection between Defendant's alleged breach of the Release Agreement and the attorney fees incurred by Plaintiff as a result of *claims he pursued against Lincoln* is simply too tenuous. To put it simply, it was not reasonably foreseeable, when the parties executed the Release Agreement, that a breach thereof by Defendant would cause Plaintiff to initiate legal proceedings against Lincoln. The Court understands Plaintiff's argument that he was "compelled" to pursue legal action against

Lincoln because Lincoln unnecessarily delayed in advancing its own arbitration claim against Plaintiff. Assuming this is the case, such suggests that actions by Lincoln - not Defendant - are the proximate cause of the damages in question. The arbitration panel, however, already awarded Plaintiff attorney fees concerning his action against Lincoln. Accordingly, the Court grants Defendant's motion for summary judgment as to this particular issue.

B.      Warner, Norcross & Judd and Raymond James

Warner, Norcross & Judd ("Warner") represented Plaintiff in the federal court action initiated by Lincoln. Warner also assisted Plaintiff in his effort to restore his various licenses that had been suspended following the allegations of wrongdoing advanced by Defendant. Raymond James, who during the pendency of the federal action and arbitration proceedings, employed Plaintiff, appears to have deployed its in-house counsel to assist Plaintiff in the aforementioned proceedings. Plaintiff seeks to recover $54,640 for fees paid to Warner.[2] It appears that Plaintiff is seeking to recover $2,733 in fees for services performed by Raymond James' in-house counsel. (Dkt. #128, Exhibit 19).

Defendant argues that Plaintiff lacks standing to recover these fees. Defendant asserts that Warner and Raymond James billed for their services by the hour and that such were paid for by a business entity owned by Plaintiff, Benefit Resource, not Plaintiff. Defendant asserts, therefore, that because Plaintiff did not pay these fees himself he lacks standing to assert a claim which properly belongs to Benefit Resource. Plaintiff responds that Benefit Resource is a subchapter S corporation. Plaintiff asserts that he has been President of this entity since 1997 and its sole shareholder since January 1, 2005. Plaintiff asserts that the income to Benefit Resource "flows through to [him] for tax

---

[2] Plaintiff asserts that he actually paid Warner $84,460 in fees, but is only seeking to recover $54,460 because he was allegedly awarded $30,000 towards these fees by the arbitration panel.

purposes" and that "Benefit Resource and Ellis are, for all intents and purposes, one and the same." Thus, Plaintiff asserts that he has standing to recover fees paid to Warner and Raymond James by Benefit Resource. For the reasons discussed at hearing, the Court finds that legitimate factual questions remain as to whether Plaintiff incurred the costs in question. Accordingly, Defendant's motion for summary judgment is denied as to these issues.

**III.        Other Alleged Damages**

The Court notes note that in addition to the various fees discussed above, Plaintiff also seeks to recover various amounts in actual out-of-pocket expenses, as detailed in his supplemented initial disclosures. (Dkt. #128, Exhibit 19). Defendant does not appear to be seeking summary judgment or other relief as to these particular items. The Court, therefore, offers no opinion as to such.

**CONCLUSION**

For the reasons articulated herein, Defendant's Motion for Summary Judgment for Lack of Damages, (dkt. #127), is hereby **granted in part and denied in part** as detailed herein. An Order consistent with this Opinion will enter.

Date:  November 24, 2009                           /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge